Mr. .Justice Montgomery
delivered the opinion of the Court:
The plaintiffs, husband and wife, sued for her personal *546 injuries and recovered $1,500. The defendant moved fora new trial “ on exceptions taken and because the evidence was insufficient to sustain the verdict, and also because the damages were excessive,” which motion -was denied, a bill of exceptions settled and an appeal taken.
The .undisputed facts are, that on the morning of February 27, 1886, the wife was a passenger on a north bound “ Four-and-half street ” car ; that at the intersection of that street and Virginia avenue the car was struck near the rear end by an incoming Baltimore train, upset and Mrs. Woodiey injured ; that at this point the defendant has four tracks guarded by gates and a watchman who was attending the gates on that morning; that the train was about five minutes late ; that it was a “ regular scheduled train; ” that the watchman who had been on the crossing two or three minutes before the train arrived, “ went into his watchman’s box and was engaged in cleaning some lamps; ” that he heard the “ locomotive’s bell ring to approach the crossing; that he then went out and saw the street car approaching; that he “ turned the gate down as soon as he got out of the box,” but the street car had passed in,side.
The plaintiffs’ evidence tended to show that there were coaches “ lying off on the side track so that the coming train could not be seen by the driver of the street car,” that when “ about midway of the track ” the driver saw’ the approaching train and struck his horse a blow; that the “ horse made a spring,” but too late to avoid the collision; that Mrs. Woodiev was cut on the forehead; that she was bruised on the sides and on the arm and that her “ lower back was seriously hurt, bruised up along the spine,” and the “ right and left shoulders somewhat contused ; ” that after the accident she was unable to move, and was attended by a physician who visited her fourteen or fifteen times and that she was taking medicine more than a month; that she did “-washing and ironing fora *547 living;” and that “ her back was still injured and failed her now.”
The watchman testified that he hallooed to the driver of the car, but did not know whether he heard him or not, but made no motion to him ; that the car still advanced to the north; that when he called the engine was fifteen or twenty feet from the end of the car; and the horse had advanced to the north bound track; that the call was loud ; that the driver whipped his horse and attempted to cross; that when he called to the driver he might have stopped “ in time to save his car, but his horse might have been killed.”
The defendant’s evidence also tended to dispute the fact that Mrs. Woodiey was seriously injured.
Mrs. Woodiey was called as a witness in her own behalf and the following, among other .questions, were put to her by her counsel:
“What was the state of your health before this accident?” and again, “ You say you were hurt in this collision; what was your condition after receiving these injuries that you have mentioned to the jury ? ” Objection was made to each question, but they were allowed to be answered and the defendant excepted. The answer to the first was, “ Mjr health was good ; I never was sick ; I never had a doctor at all, never did before that.” And to the second question she answered, “ I am unable to work because my back fails me at all times, and I never have been really well since. Right in the small part of my back I suffer with misery there pretty much all the time.”
No reason was given for the objection and while it is quite true that no recovery could be had in this case for the actual loss of her earnings, or services, if any, it was not improper to permit her to state facts which went to show that her health has been impaired by her injuries and that she suffered therefrom.
Possibly the firsf part of her last answer as to her inability *548 to work, might have been, improper for some purposes, but the question was proper and the court did not err in ruling upon it. No motion was made to strike out the answer and the jury were instructed that there could £>e no recovery for “the diminution of the wife’s earning power” but “only for the physical and mental suffering resulting from the injury done to the wife,” which instructions were quite as favorable on this subject as the defendant could properly ask.
Questions of like character were propounded to witnesses Mary Robinson and Matilda Brown, respectively, and were answered against objection, but we think that the evidence was proper, or rather that the questions were proper, not for the purpose of enabling the plaintiffs to recover for the loss of the wife’s labor, but to show what injury she sustained and the consequent pain which followed. Each of these witnesses in response to the questions took occasion to tell that Mrs. Woodiey had been complaining; said “ she could not work, &c., since the accident,” and we have serious doubt as to the admissibility of such declarations. But the questions were proper. The court did not err in overruling the objections to them, and if the answers were irresponsive and incompetent the counsel for the defendant might have moved to strike them out, and if the motion was denied then have exceeded to such denial. We are only called upon to decide whether or not the trial justice correctly overruled the objections to the questions and we think'die did.
This brings us to the consideration of the points involved in the respective prayers and the charge of the court. Three prayers were proposed and given on behalf of the plaintiffs. The defendant’s counsel offered five, two of which were refused. The court also on its own motion instructed the-jury as to the case.
The defendant’s counsel complains, to use his language,, that “the court left it to the jury to determine what was-timely and proper notice of the approach of a train.” And *549 again, “in effect directed the jury that if they found that the plaintiff was injured by reason of th.e corporation’s negligence in its failure to give timely notice of the approach of its trains, the plaintiff should recover, even though they should also believe the driver of the street car * * * was guilty of such negligence as caused the injury to her; in other words, the defendant was responsible, although the negligence of another person wholly caused the injury; ” and lastly that the court declined to instruct, in effect, that the defendant was not liable even though the juiy were satisfied from the evidence that the watchman “gave notice to the street car driver just before the accident, and in time to stop his car by reasonable diligence.”
We shall, I think, find it useful to stop at this point and recall the case as it is presented in the record.
The defendant’s tracks occupj'" Virginia avenue at the point where it intersects Four-and-a-half street. At that intersection the defendant has very properly established gates on either sides of its tracks, to warn and prevent teams and drivers from crossing when trains are approaching. At the time of the accident the watchman failed to close his gates as he ought to have done. If the gates had been closed, there is no room for question, the accident could not have occurred. But he did not do this, and so it it is attempted to show that instead he notified the driver of the street car that a train was approaching; and it is urged that such notification was all that could have been accomplished had the gates been closed, and that therefore, if the driver was seasonably notified, no matter hoiv, the defendant was not guilty of negligence, but the driver was.
And now assenting for a moment that the purpose of the gates was not to restrain, but simply to-notify — how stands the matter. The trial justice advised the jury that the defendant having" neglected to close' the gates, ought to *550 have given the driver “timely and sufficient” notice of the approach of the train.
Of what notice was he speaking ? Why, manifestly of the only notice asserted to have been attempted and that was by the watchman calling (hallooing) to the driver, “but didn’t know whether he heard him or not,” and when the engine (moving at the rate of 6 miles an hour) was 15 or 20 feet from the end of the car.
The court told the jury, in effect, that if they were satisfied from the evidence that this calling (this hallooing) at that time, and under the circumstances as they then existed was “ timely and sufficient,” then defendant was not in fault. But that if satisfied that such notice, the only notice that was attempted, was not timely or sufficient, or “timely and adequate,” then the “company was,, as a matter of law, guilty of negligence.” The meaning of this instruction was, we think, when applied to the evidence in this case, plain, and it was that if the jury were satisfied from the evidence that the driver heard and understood the call, and if in the opinion of the jury it was “ timely and sufficient,” or “ timely and adequate,” not as to its manner but in time, in proper time, and adequate and sufficient to apprise the driver of the approaching train, then the defendant had discharged its duty, and if the driver nevertheless went on, then he, and not the company, was in fault. But that if the driver did not hear the call, or even if he did but it was not timely, then the defendant was in fault and even though the driver was himself guilty of carelessness which contributed to the accident, the defendant could not escape liability to the plain tiff".
We do not think that this instruction can, in this case and upon this proof, fairly be said to have left to the jury (as defendant’s counsel urges) “to determine what was timely and proper [in manner] notice of the approach of. a train;” nor “that they might decide that, one system of *551 signals was sufficient at this crossing for this cause, and that they might require another system in another case.”
In order to a proper understanding of the next point it seems necessary to quote the defendant’s prayers on this subject. They are as follows:
“If the jury shall find from the evidence that the gatekeeper or gateman of the defendant at the crossing, gave notice to the street car driver, just before the accident and in time to have enabled him, the said driver, to stop his car by reasonable diligence, and that the driver of the street car, instead of endeavoring to stop bis car, attempted to cross the track, on which the passenger train and engine which inflicted the injury were approaching, ahead of such engine, and that the accident was thereby caused, the defendant is entitled to a verdict in its favor.”
And again : “ On the pleadings and evidence in this case the verdict must be in favor of the defendant, if the jury shall find from the evidence that the gatekeeper of the defendant called to the driver of the street car in question and told him to stop, in time to have enabled him [the driver] to stop the said street car by reasonable diligence, and have thus avoided the accident.”
First. Both of these prayers omit one important element, and that is, whethermr not the driver heard the call. The first one does employ an expression which in ay perhaps bo construed to mean that the driver did see, or understand the watchman’s efforts to stop him, although the words used “gave notice to the street car driver” are not free from ambiguity.
The last one asks the court to instruct that if this “gatekeeper ‡ * * called to the driver, and told him to stop in time,” &c., that was sufficient.. The record does not advise us whether the driver was or was not sworn as a Avitness. But it will be remembered that the gatekeeper himself testified that he made no motion, simply called to the driver, and did not know Avhether he heard him or not. *552 Manifestly the court could not properly say that, as matter of law, if the watchman, who had neglected to shut his gates, did call, or even did “ give notice to the street car driver” by calling to him at a certain point of time, and still the driver went on that then the watchman was not, and the driver was, guilty of negligence.
But suppose it was the conceded fact here that the watchman did call, and the driver did hear and understand him. at “ about the time the horse had advanced to the north bound track;” and that if he had acted instantly and wisely he might have stopped “ in time to save his car, but his horse might have been killed.” And suppose it was conceded that in attempting to hurry across the driver was imprudent, could the court properly tell the jury that no matter how careless and negligent the watchman may have been in omitting his duty and thereby getting the driver into his precarious situation, if he then, at that point, when the car might have escaped by the sacrifice of the horse, acted imprudently, and so encountered disaster, the defendant was excused from all liability to the plaintiff, a passenger on the street car? We think not, and we therefore determine that those prayers were both properly refused.
If the first of plaintiff’s prayers could bear the construction put upon it by defendant’s counsel, i. e., that it “advised the jury that the defendant was responsible, although the negligence of another person wholly caused the injury,” then the granting of it would indeed be indefensible. We quote it:
“The jury is instructed that if they believe from the evidence that the female plaintiff was injured by the defendant by reason of the defendant corporation’s negligence in its failure to give timely notice of the approach of its train [by which the said plaintiff was injured] to the Four and a half street and Virginia avenue crossing by closing its gates or otherwise; and that the said plaintiff was not *553 guilty of such negligence on her part as caused the injury to her, or contributed to the same, then they should find for the plaintiffs, even though they may also believe that the driver of the' street car in which the plaintiff was riding was guilty of such negligence.”
The prayer is not happily worded, but its plain meaning is that if Mrs. Woodiey was injured because of the defendant’s negligent failure to give timely notice of the approach of its train, then it was liable, even though the driver was guilty of negligence which contributed to the accident. That is its fair meaning. The jury were all the time told in substance that the first question was whether or not the plaintiff was injured by or because of defendant’s negligence.
On the whole, we feel reasonably certain that, without regard to the language of the prayers, or the suggestions as to the necessity of notice generally, or the manner and mode thereof, that the jury could not, and did not, lose sight of the fact that-the question was whether or not the driver of the car was notified at all by the watchman’s “ hallooing ” to him, of the approach of the train, and if so, whether it was at a time, when, under the circumstances, it couhj fairly be said to be “ reasonable and sufficient,” “ adequate and timely,” to relieve the watchman from the imputation of negligence in failing to give notice at all, or until it was so late that it alone, or in connection with the imprudence of the driver, finding himself in such a predicament, brought about the calamity and the consequent injury to Mrs. Woodiey.
On all the disputed material questions we think the instructions were as favorable, at least, as defendant could rightfully request.
The question of excessive damages is not made in defendant’s brief, but it is in the record and before us for consideration.
The evidence on this subject is very meagre. The trial *554 occurred more than two years after the accident and plaintiff still complains of suffering from her injuries. The-record does not tell us whether or not her physician testified, and does not purport to.contain all the evidence. It. recites that “ plaintiffs produced several other witnesses to maintain the issues on their part joined.” The trial justice heard all the evidence and heard and denied the motion. We would not feel warranted on the record in disturbing it, and inasmuch as we find no error which could have operated to defendant’s injury, we must direct that the judgment be affirmed.